DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Charles Gollihue appeals his conviction for driving while under the influence of alcohol in violation of R.C. 4511.19. We affirm.
 I.
On October 23, 1996, at 10:30 a.m., Chief Weir of the Village of Seville Police Department observed Gollihue sitting in the driver's seat of a pick-up truck that was parked in front of the Wayside Market with the engine running. Weir was familiar with Gollihue and knew that he had a problem with alcohol and had been previously arrested for an alcohol related offense. Weir parked his police cruiser across the street and began watching Gollihue. After a few minutes, Weir noticed that Gollihue was slumped over the steering wheel. At that point, Weir moved his cruiser beside the Wayside Market where he had a better view. After a few more minutes, Gollihue drove the truck around to the side of the Wayside Market where he parked it again and again left the engine running.
Weir followed Gollihue to the side of the Wayside Market and stopped his cruiser behind the parked truck. Weir exited his cruiser and approached the driver's side of the truck. Gollihue was sitting in the truck attempting to light a cigarette. Weir knocked on the driver's side window and Gollihue rolled the window down. Weir immediately noticed the odor of an alcoholic beverage coming from Gollihue and saw that Gollihue's eyes were bloodshot and glassy. Upon questioning, Gollihue admitted that he had consumed two beers earlier that morning.
Weir asked Gollihue to exit the truck and perform a field sobriety test. Gollihue failed the sobriety test and was arrested. At the police station a breath test revealed a concentration of .281 grams by weight of alcohol per two hundred ten liters of breath. Gollihue was charged with driving while under the influence of alcohol and was eventually convicted. Gollihue unsuccessfully attempted to suppress the evidence obtained by Weir.
 II.
On appeal, Gollihue assigns two related errors:
 I. The Trial Court erred when it failed to grant Defendant's motion to suppress.
 II. The State had no specific and articulable facts to reasonably warrant an investigatory stop and eventual arrest of the Defendant, thus the evidence flowing from the illegal stop cannot be used to convict the Defendant.
Both assignments of error challenge the constitutionality of the initial encounter between Gollihue and Weir, when Weir first approached Gollihue as Gollihue sat in the parked truck. Essentially, Gollihue characterizes the initial encounter as a "traffic stop," and argues that this initial encounter was either not supported by any objective justification or the objective justification had grown stale due to Weir's delay in approaching Gollihue. However, we conclude that the initial encounter was not a "seizure" and, thus, did not require any objective justification.
Not every encounter between a police officer and a private citizen raises a constitutional search and seizure issue. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." Terry v. Ohio (1968),392 U.S. 1, 19, 20 L.Ed.2d 889, 905, fn. 16.
 [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen * * *. * * * Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.
Florida v. Royer (1983), 460 U.S. 491, 497, 75 L.Ed.2d 229, 236
(citations omitted). See also State v. Osborne (Dec. 13, 1995), Montgomery App. No. 15151, unreported.
A consensual encounter between a police officer and a citizen does not raise constitutional concerns until "the officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen." Terry, supra. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person." Id. at 16, 20 L.Ed.2d at 903.
 [A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
United States v. Mendenhall (1980), 446 U.S. 544, 554,64 L.Ed.2d 497, 509 (footnote omitted).
Generally, "law enforcement officers may, without a reasonable suspicion of criminal activity, approach and question individuals seated in parked vehicles. Such an approach is not a `seizure' of an individual seated in the vehicle." State v.Harkless (Dec. 15, 1995), Washington App. No. 94 CA 62, unreported.
In this case, after watching Gollihue for a short period of time, Weir merely approached Gollihue's vehicle in order put some questions to him. Weir never called for additional officers, never displayed his weapon, never physically touched Weir, and never used language or tone of voice indicating that Gollihue's compliance may be compelled. Gollihue freely rolled down the window and willingly answered Weir's initial questions. Any reasonable person would have believed he was free to leave, or, more pointedly, to leave the window rolled up and ignore Weir's questions. Therefore, the trial court could have concluded that the initial encounter did not constitute a seizure and that Weir's actions need not be supported by any objective justification. Gollihue's assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina, Wadsworth Municipal Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
SLABY, P.J. and REECE, J. CONCUR.